# In the United States Court of Federal Claims

No. 10-178C
(Filed August 10, 2012)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
FLINTCO, INC.,                                *
                                              *
                    Plaintiff,                *
                                              *
         v.                                   *
                                              *
THE UNITED STATES,                            *
                                              *
                    Defendant.                *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## ORDER

As recounted in a previous order, pending before the Court are discovery-related motions filed by both parties.  *See* Order (July 23, 2012) at 1-2.  The plaintiff has moved to compel discovery, seeking the production of documents withheld on privilege grounds and the deposition of certain witnesses and party representatives.  *See* Pl.'s Mot. to Compel at 1-2.  The defendant has moved for a protective order which would put discovery on hold pending the outcome of a dispositive motion.  Def.'s Combined Mot. for Prot. Order Staying Discovery ("Def.'s Mot.") at 14-22.

Turning first to the government's motion, the Court is not persuaded that good cause has been shown to limit discovery in general, under Rule 26(c) of the Rules of the United States Court of Federal Claims ("RCFC").  Our rules require that we "must limit the frequency or extent of discovery" when "the burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the importance of the discovery in resolving the issues," RCFC 26(b)(2)(C)(iii), but the Court does not believe that this means that the mere possibility that a party could prevail on a motion for judgment on the pleadings entitles that party to suspend discovery.  The government has identified no precedent for such a ruling, and the plaintiff has cited persuasive authorities to the contrary.  *See* Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Compel ("Pl.'s Reply") at 15 (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) and *Turner Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 555 (D. Nev. 1997)).

While it may be true that *any* discovery conducted will be of no benefit, and thus outweighed by *any* burden or expense, if the Court were to (correctly, that is) enter judgment for the government based solely on the plaintiff's pleadings, the Court is in no position to know that this will be the case until the merits of the dispositive motion are reached.  The Court is not

inclined to prejudge the likelihood of defendant's success, as this sort of exercise is usually reserved for circumstances involving irreparable injury, not the run-of-the-mill costs of discovery. *Cf. FMC Corp. v. United* States, 3 F.3d 424, 427 (Fed. Cir. 1993) (reciting the preliminary injunction standard).   The procedure seems particularly inappropriate when one considers that our rules contain a mechanism for delaying discovery when the government believes that the allegations of a complaint do not entitle a plaintiff to relief --- the government could have filed a motion under RCFC 12(b)(6) in lieu of an answer.   *See* RCFC 26(d); RCFC App. A, ¶ 3.   When the defendant cannot itself appreciate the possible legal insufficiency of a complaint within the time to file its response, and decides to file an answer --- triggering the obligation to confer and opening the door to discovery --- the Court should not be expected to postpone a plaintiff's right to discovery based on a preliminary assessment of a subsequently-filed dispositive motion.   *See Gray*, 133 F.R.D. at 40.

Thus, the mere pendency of a dispositive motion should not automatically postpone discovery or limit it to the issues the motion concerns.   But the specific discovery sought could threaten to inflict "annoyance, embarrassment, oppression, or undue burden or expense," RCFC 26(c)(1), warranting limitation via a protective order.   The Court accordingly must scrutinize the plaintiff's interrogatories and deposition requests, and the government's objections, to determine if the defendant has established the requisite good cause justifying a court-ordered limitation.

Starting first with the interrogatories, the Court notes that the government's initial paper rather cursorily described its objections, first complaining that the interrogatories were not served in time to be used in Flintco's opposition to the RCFC 12(c) motion, and that nearly all of them were irrelevant to the issues presented by that motion.   Def.'s Mot. at 16-17.[1]   It then asserted that several interrogatories (nos. 4-6, 8, 10-17, 19, 20, 22) duplicated unspecified document requests, *id*. at 17, and contended in general that the interrogatories were "also extremely burdensome," *id*. at 18 --- because they concern actions more than a decade in the past, information that the agency does not keep, and individuals no longer employed by the agency, and because they allegedly exceed twenty-five in number due to subparts.   *Id*.   The only specific interrogatory discussed as burdensome was number ten --- albeit as illustrative of the rest --- which "would require counsel to attempt to interview numerous individuals" when "a significant number of documents" on the topic were already produced.   *Id*.

After the Court requested that Flintco file a supplemental paper focusing on the discovery the plaintiff believed was necessary to respond to the motion for judgment, *see* Order (Apr. 6, 2011), Flintco filed a brief seeking to justify an immediate response to fifteen of its twenty-four interrogatories (nos. 4, 6-10, 12, 16-20, 22-24).   Pl.'s Supp'l Br. at 6-14.   In its responsive brief, the government for the first time provided some detail in explaining why it objected to fourteen of the fifteen interrogatories.[2]   *See* Def.'s Supp'l Resp. Br. at 11-20.   For two of them, numbers nine

---

[1]   The government conceded that Interrogatory No. 24, concerning whether or not (and why) the agency requested its head to authorize the signing of a form designating Flintco as its agent, was "arguably relevant" to the RCFC 12(c) motion.   Def.'s Mot. at 17 n.9.

[2]   As was discussed above, Interrogatory No. 10 had been specifically addressed in the government's prior brief.

and eighteen, the government's only objection is that the information sought is irrelevant to the issues raised in its motion for judgment, *see id.* at 15, 17-18, an argument that the Court rejects for the reasons already stated.   The only objection to a third, Interrogatory No. 24, was that it was irrelevant to all but one issue presented in the motion for judgment, and the government maintains that all Flintco need know is that no request for agency head approval was made.[3]   *Id.* at 19-20. As with numbers nine and eighteen, the government provided no reason for finding this interrogatory unduly burdensome or expensive.

The government argues that several other interrogatories, in addition to being irrelevant to its motion for judgment, are duplicative of document requests with which it has already complied. These are numbers four, six, ten, twelve, sixteen, seventeen, nineteen, twenty, twenty-two and twenty-three.   *Id.* at 12, 14, 16-19.   Interrogatories Nos. 4 and 6 request detailed descriptions of the "policies, authorities, or procedures" of the U.S. Department of Justice's Federal Bureau of Prisons ("the agency") concerning the execution of forms (or the taking of other actions) making contractors exempt from state or local taxes.   *Id.* at 11; *see also* Ex. 21 to Def.'s Mot. (ECF No. 34-4 at 8-9).   The defendant argues that these interrogatories duplicate two document requests, numbers twenty-four and twenty-seven, Def.'s Supp'l Resp. Br. at 12 --- one of which apparently resulted in the production of no documents.   *See* Ex. 10 to Def.'s Mot. (ECF No. 34-2 at 53-54 (response to Request No. 27)).   The government has failed to articulate any undue burden or expense associated with a response to these two interrogatories, or explain how "the discovery sought is *unreasonably* cumulative or duplicative," RCFC 26(b)(2)(C)(i) (emphasis added), as one would think that the prior document production should make the responses easier to craft.

Interrogatories Nos. 16 and 17 seek detailed descriptions of the actions taken by the agency to evaluate or review Flintco's proposed change and request for an equitable adjustment relating to the state and local sales taxes, information which was allegedly within the topics of several document requests.   Def.'s Supp'l Resp. Br. at 13-14; *see* Ex. 10 to Def.'s Mot. (ECF No. 34-2 at 47-50 (Requests Nos. 15, 16, 18-21)).   The government criticizes Flintco's contention that the contractor seeks information relating to admissions against the defendant's interests, *see* Pl.'s Supp'l Br. at 10, arguing this amounts to "wholly exploratory operations in the vague hope that something helpful will turn up."   Def.'s Supp'l Resp. Br. at 13-14 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989)); *see also id.* at 14 (citing *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (rejecting discovery amounting to a "fishing expedition")).   These same objections are made to Interrogatory No. 12, concerning pre-award communications between the agency and offerors regarding state and local taxation. *Id.* at 17.   But since these interrogatories are rather narrowly focused, dealing with the agency's treatment of the plaintiff's efforts to be reimbursed for sales and use taxes, and with communications concerning those taxes and the procurement which resulted in Flintco's contract, the Court does not see how they remotely resemble an impermissible "fishing expedition."   Nor has the government convincingly demonstrated that the use of more than one method of discovery

---

[3]   If this information from outside the pleadings proves essential to the government's motion for judgment regarding any count of the complaint, the motion will be denied as it relates to that count, for the Court will not entertain the motion as one brought under RCFC 56.   *See* Order (July 23, 2012) at 2.

for the same topics of inquiry (as opposed to, say, scheduling redundant depositions) is unreasonably duplicative or unduly burdensome.

The other five interrogatories (nos. 10, 19, 20, 22, 23) which purportedly duplicate document requests, *see* Def.'s Supp'l Resp. Br. at 16, 18-19, have similarly not been shown to be unreasonably duplicative or unduly burdensome.  In any event, the mere production of documents connected with the evaluation or review of Flintco's proposals may not have revealed who was involved in these processes and would not reflect matters that were not memorialized, and thus does not divulge the same information sought in Interrogatories Nos. 19, 20, 22 and 23.[4]  The government provides an explanation of the alleged burden posed by only one of these interrogatories, number ten, which is again said to "require counsel to attempt to interview numerous individuals, many of them former [agency] employees, about whether they had communications concerning taxes over the approximately nine-year span covered by the interrogatory."  Def.'s Supp'l Resp. Br. at 16; *see also* Def.'s Mot. at 18.  But the government exaggerates the breadth of this request, describing it as involving "all internal [agency] communications concerning taxes," Def.'s Supp'l Resp. Br. at 15, when it is clearly limited to those involving the construction of the Pollock, Louisiana federal prison.  *See* Ex. 21 to Def.'s Mot. (ECF No. 34-4 at 12 (Interrogatory No. 10)).  The need to contact "numerous" individuals, Def.'s Supp'l Resp. Br. at 16, while time-consuming, does not appear to the Court to involve any undue burden or even a marginal expense, and hardly seems atypical.

The government also objects to the inclusion of subparts in Interrogatories Nos. 7, 8, 10 ("implicitly"), 16 and 17.  *Id.* at 12-13, 15.  Under our rules, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all *discrete* subparts."  RCFC 33(a)(1) (emphasis added).  The defendant makes no effort to explain what might constitute discrete subparts of these interrogatories, or to establish how many interrogatories it believes were served by Flintco.  As an opinion of our court has noted, the Judicial Conference Advisory Committee on Rules of Practice and Procedure, responsible for the language of the Federal Rules of Civil Procedure on which our rules are based, has explained that "'a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.'"  *Hernandez, Kroone & Assocs. v. United States*, No. 07-165C, 2008 WL 4725433, *3 (Fed. Cl. June 16, 2008) (quoting Fed. R. Civ. P. 33(a)(1) advisory committee's note (1993 amends.)).  To determine if subparts are discrete for purposes of these rules, courts consider whether they are secondary to a primary question, under which they are logically and factually subsumed, or instead are independent, representing a separate line of inquiry.  *Id.* at *4.  A review of the five interrogatories noted by the defendant shows for four of them (nos. seven, ten, sixteen and seventeen), the subparts may well all be of the "who, what, when, how" variety making each interrogatory count just once, and the fifth (no. eight) merely seems to employ synonyms describing its topic (evaluation/review and inquiries/requests/demands).  *See* Ex. 21 to Def.'s Mot. (ECF No. 34-4 at 11, 12, 14).  In the

---

[4]   The Court notes, however, that the portions of these interrogatories which state "and if in writing, attach a copy" do not appear to serve any useful purpose concerning documents that have already been provided to the plaintiff --- one production would seem to be enough.   When a particular document has already been provided, a second copy will not be required.

absence of any articulated grounds supplied by the defendant for finding a subpart to be discrete for RCFC 33(a)(1) purposes, the Court has no basis to determine that the plaintiff exceeded the interrogatory limit.

The government objects to the depositions that Flintco attempted to schedule, on timing grounds and as irrelevant to the issues to be decided in the motion for judgment. Def.'s Mot. at 19-22; Def.'s Supp'l Resp. Br. at 21-23. Unlike the interrogatories, which do not on their face seem to impose additional expenses to be borne by taxpayers (and have not been shown to do so by the government), depositions by their nature involve significant marginal costs for travel, lodging and the like --- all of which would be unnecessarily inflicted were the government to prevail in either of its dispositive motions. But as the government notes, Flintco did not serve formal notice of any depositions, but requested in a letter (with one draft notice) that they be cooperatively scheduled. *See* Def.'s Mot. at 19; Def.'s Supp'l Resp. Br. at 21 n.4; Ex. 22 to Def.'s Mot. (ECF No. 34-4 at 19-30); Pl.'s Reply at 12. Thus, concerning depositions, at this point there is nothing from which to protect the defendant (nor anything to compel). Our court does, however, "enjoy broad discretion in controlling discovery," *Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583, 585 (2000), a power which is formally recognized in RCFC 26(b)(2)(A). To sensibly manage discovery and avoid unnecessary expenses, the Court determines that no depositions should occur until the defendant's dispositive motions have been ruled upon; if the case survives these motions the depositions sought by Flintco must be scheduled within thirty days of the issuance of the Court's decision regarding the dispositive motions. For the reasons detailed above, the defendant's motion for a protective order is **DENIED**.

Turning to Flintco's motion to compel, it, too, is **DENIED** as it relates to the depositions the plaintiff seeks to schedule, since no deposition has been formally noticed and the Court has postponed depositions until the dispositive motions are resolved. Regarding document production, the plaintiff argues that the government has waived its right to assert the attorney-client privilege or the attorney work product doctrine, for three reasons. First, because the government failed to serve its written responses within the thirty-day deadline of RCFC 34(b)(2)(A), Flintco argues that all objections to document production, including those based on privilege, were waived. Pl.'s Mem. in Supp. of Mot. to Compel ("Pl.'s Br.") at 7-9. Second, the plaintiff contends that the government waived the attorney-client privilege by placing legal advice at issue. *Id*. at 12-14. Finally, plaintiff asks the Court to determine whether the government waived its privilege with respect to a single document that the government inadvertently produced and failed to identify on its privilege log. *Id.* at 10.

Concerning the plaintiff's first argument, the Court notes that unlike the rule regarding interrogatories --- which specifies that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure," RCFC 33(b)(4) --- the rule requiring written responses to discovery requests does not contain an automatic waiver provision. *See* RCFC 34(b)(2)(A)-(C). The authorities (none binding) cited by Flintco, *see* Pl.'s Br. at 8-9, do not appear to stand for the proposition that the mere failure to serve written objections within thirty days of receiving requests to produce documents waives the attorney-client privilege and work product immunity for documents embraced within those requests. The opinion from our court involved objections as to relevance, not the assertion of privilege. *See Estate of Rubinstein v. United States*, 96 Fed. Cl. 640, 644 (2011). In one case, the only privilege asserted was in

response to interrogatories, *see Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 n.3 (D. Colo. 2000), and in the others, the recalcitrant parties failed to serve written objections prior to the trial court's involvement in the disputes.   *See Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d 8, 9-10 (1st Cir. 1991) (no response prior to granting of motion to compel); *Jones v. Forrest City Grocery Inc.*, No. 4:06CV00944-WRW, 2007 WL 1704590, *4 (E.D. Ark. June 12, 2007) (no response to request for production); *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006) (failure to produce a privilege log).[5]

On this point, the Court is inclined to agree with the authorities relied upon by the government, *see* Def.'s Mot. at 24-25, which found that "waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith."   *United States v. British Am. Tobacco (Invs.) Ltd.*, 387 F.3d 884, 891 (D.C. Cir. 2004) (internal quotations and citations omitted).   The Court is not persuaded that this is that sort of case.   The set of document requests was served on September 21, 2010, *see* Ex. 1 to Pl.'s Br. at 12, and it appears that on October 28 --- three days after written responses would have been due, *see* RCFC 6(a)(1)(C), 6(d), 34(b)(2)(A) --- during a telephone conference, counsel for the parties discussed government counsel's efforts at "privilege review of the 67 boxes" of documents gathered in response to the production requests.   Ex. 3 to Def.'s Mot. at 1 (Briglia email).   Within two weeks of being served with the document requests, government counsel provided Flintco's counsel with a draft protective order, Kurland Decl. ¶ 4, the issuance of which the former believed was necessary prior to document production.   *See* Ex. 3 to Def.'s Mot. at 1 (Kurland email).   Flintco's counsel did not respond with a revised draft of the protective order until December 1, 2010.   *See* Ex. 5 to Def.'s Mot. at 1-2 (McLaughlin email).   Twelve days later, the motion requesting the issuance of the proposed order was filed, *see* Consent Mot. for Prot. Order, and in the interim the government served its written responses and objections to the production requests.   *See* Ex. 10 to Def.'s Mot. at 16 (served Dec. 10, 2010).   Under these circumstances, the Court is satisfied that the defendant acted reasonably, cooperatively and without undue delay in attempting to comply with the requests for production, and that the delay in serving written objections does not warrant a waiver of the attorney-client privilege or attorney work product protection.

Under Flintco's second argument, it maintains that the government has waived the attorney-client privilege regarding four documents containing legal advice.   Pl.'s Br. at 11 & Ex. 3.   These documents concern the agency's authority to designate a contractor as its agent and its ability to obtain a state sales tax exemption.   *See id*.   The plaintiff argues that the government has placed the legal advice of agency counsel at issue, *see id*. at 12-14; Pl.'s Reply at 10, by stating that the agency had no authority to "specifically endorse a tax exemption for Flintco on the contract," Ex. 11 to Pl.'s Br. at 1; by quoting from a Federal Circuit opinion that a contractor "takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government," Def.'s Mot. for J. upon Pldgs. at 21 (quoting *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citations omitted)); and by denying the plaintiff's allegation that "Flintco expressly put the risk of obtaining sales tax exemption on [the agency]."   Compl. ¶ 86; *see* Answer ¶ 86.

---

[5]   In the other opinion cited by the plaintiff, it is unclear whether the party that failed to properly specify its objections was allowed to withhold documents on the basis of privilege.   *See Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 531 (E.D. Pa. 1999).

Flintco seeks to compel disclosure of the four documents under the "at-issue implied waiver" that was first articulated in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash 1975), and has been applied in decisions of our court.   *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 521-23 (2009); *Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 782-86 (2007).[6]   Under this doctrine, an implied waiver of the attorney-client privilege may be found when:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn*, 68 F.R.D. at 581.   In short, "[t]he at-issue implied waiver applies where the privilege holder makes assertions, the truth of which can only be assessed by examination of privileged communications."   *Blue Lake*, 75 Fed. Cl. at 783.

But in this case, the government has asserted no affirmative defenses.   *See* Answer.   Nor, contrary to the claims of Flintco, has it "inject[ed] the advice of counsel . . . as an issue into this case."   Pl.'s Br. at 12.   A party cannot waive the attorney-client privilege of its opponent, by making allegations concerning the knowledge or intentions of the latter and then demanding the production of privileged legal communications when these allegations are denied.   As things currently stand, the government is not relying on advice of counsel to defend itself nor is it claiming that the agency's contracting intentions were shaped by such advice.   *Cf. Blue Lake*, 75 Fed. Cl. at 784-85 (finding privilege waived when documents and testimony showed reliance on advice of counsel).[7]   Circumstances may well change as the case further develops, and accordingly the Court's rejection of this argument should not be viewed as prejudicing Flintco's ability to raise the issue anew at a later juncture.

Flintco's third waiver argument concerns a single document which the government produced but later requested that Flintco return, alleging it was inadvertently disclosed.   The document was part of a small batch of materials from the office of agency counsel that was

_____

[6]   The doctrine was discussed in one Federal Circuit opinion, *see Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1579-80 (Fed. Cir. 1985), and dicta in a subsequent opinion stated that "in treating privileges asserted by plaintiffs" the Circuit "ch[o]se instead the balancing approach suggested in *Hearn* and elsewhere."   *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1204-05 (Fed. Cir. 1987).   The reference to *Hearn* in the latter case appears to be erroneous, as *Hearn* did not employ a balancing test, *see Hearn*, 68 F.R.D. at 581, and the Circuit did not apply the *Hearn* factors.   *See Afro-Lecon*, 820 F.2d at 1205-06.

[7]   Flintco maintains that the agency rejected its request for an equitable adjustment "in part on the grounds that [the agency's] contracting officer . . . knew she/he lacked authority, to grant Flintco tax exempt status," and thus "clearly injected the issue of protected information into the lawsuit."   Pl.'s Br. at 13.   But the agency letter cited by the plaintiff makes no reference to any advice of counsel.   *See* Ex. 11 to Pl.'s Br.

separately produced for inspection and copying.  Pl.'s Br. at 10.   The presence of some potentially privileged information in this document was drawn to defendant's counsel's attention in a letter from plaintiff's counsel dated January 19, 2011.  Ex. 4 to Pl.'s Br. at 3.   Eight days later, the government's counsel informed Flintco's that the document appeared privileged, Kurland Decl. ¶ 58, and the former invoked the claw-back provisions of the protective order in a letter dated February 9, 2011, requesting the return of the document.  Ex. 27 to Def.'s Mot. (ECF No. 34-4 at 47); *see also* Prot. Order (Dec. 14, 2010) ¶¶ 18-19.   Flintco argues that under the circumstances, the government could not have overlooked the document in its review of so few pages of material, and thus must have intended to disclose it.  Pl.'s Br. at 10.   The defendant maintains that the document, although on its face a request for legal advice, was not noticed when documents were assembled for production, as it was attached to a copy of a different document that was not privileged because it was received from a third party (the Louisiana Department of Revenue).  *See* Def.'s Mot. at 32-34; Kurland Decl. ¶ 57.   During the hearing on Flintco's motion, a copy of the two documents, with the purportedly privileged portions redacted, was provided by the government.   The Court concludes that *in camera* review of an unredacted copy of the document is necessary to determine whether it must be returned to the defendant.   Flintco shall provide Chambers with a copy of the document within ten days of the date of this order.

Finally, the plaintiff also argues that the government improperly claimed that two documents were privileged --- a faxed memorandum sent on April 19, 2005, and an email sent on December 13, 2007.   Pl.'s Br. at 14-15.   The author of both had been a Supervisory Contracting Officer with the agency at the time Flintco's contract was awarded, but had left the agency for another government department in early 2006.  *See* Ex. 3 to Pl.'s Br.; Pl.'s Br. at 14-15; Kurland Decl. ¶¶ 45, 49.   Concerning the first document, the plaintiff argues that since neither the sender nor the recipient of the faxed memorandum was an attorney, the document was not protected by attorney-client privilege.  Pl.'s Br. at 14-15.   The government clarifies that the agency's General Counsel's office had produced the memorandum, which pertained to the FBOP's "legal authority to designate a contractor as the Government's agent."  Def.'s Mot. at 31.   As the defendant notes, privileged communications may be forwarded within an agency without jeopardizing their privileged status.  *See id.* (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (holding that "the privilege protects from disclosure communications among [an entity's] employees that reflect advice rendered by counsel to the [entity]")).   This memorandum was properly withheld as privileged.

Regarding the December 13, 2007 email, plaintiff argues that the email is not protected from disclosure under the attorney-client privilege because its author was no longer an employee of the agency when he sent the email to agency officials.  Pl.'s Br. at 15.   In response, the government argued that although this employee had transferred to another federal agency, he was still an employee of the federal government, which is the defendant in this case.  Def.'s Mot. at 32.   Moreover, the email purportedly contained the notes that the former Supervisory Contracting Officer prepared and used to solicit legal advice for the agency while he was still in its employ. *See id.*; Ex. 32 to Def.'s Mot.   Clearly, the attorney-client privilege covers "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).   Plaintiff cites no authority for the proposition that an employee who provided information to counsel for his employer, for the purpose of obtaining legal advice for his employer,

somehow waives his employer's attorney-client privilege by taking a copy of the document containing this information with him when he leaves for new employment.   *Cf. United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("[S]ince a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so."); *In re Allen*, 106 F.3d 582, 605-06 (4th Cir. 1997) (holding that the scope of the attorney-client privilege applies equally to current and former employees).   Nor does it make sense that the privilege would be waived when, like here, the former employee returns this information to the former employer on whose behalf it was originally communicated to counsel.   This email was properly withheld as privileged.

The plaintiff's motion to compel is accordingly **DENIED**, as is the defendant's motion for a protective order.   The defendant shall serve its responses to Interrogatories Nos. 4, 6-10, 12, 16-20, and 22-24 on or by **September 10, 2012**.   The government's responses to Interrogatories Nos. 1-3, 5, 11, 13-15, and 21 shall be served on or by **October 1, 2012**.   If both of the defendant's dispositive motions are denied, the depositions requested by the plaintiff shall be scheduled to be held within thirty days of the issuance of the opinion denying the motions. Flintco shall deliver to Chambers for *in camera* review, on or by **August 20, 2012,** a copy of the document bearing Bates number FBOP 01363.   No costs are awarded to either party.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge